# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REYMUNDO Z. MENDOZA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS E. PEREZ, in his official capacity, *et al.*, <br><br> Defendants, <br><br> v. <br><br> WESTERN RANGE ASSOCIATION, *et al.*, <br><br> Intervenor-Defendants. | Civil Action No. 11-1790 (BAH) <br><br> Judge Beryl A. Howell |

## MEMORANDUM OPINION

This case is before the Court to determine the appropriate remedy to address the procedural violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, by the defendants Thomas E. Perez[1], in his official capacity as Secretary of Labor, and the U.S. Department of Labor (collectively, "Federal Defendants"). Pending before the Court is the plaintiffs' motion for a remedial order "setting a schedule for the [Federal Defendants] to initiate and complete a rulemaking establishing terms and conditions of employment, including wages and housing benefits, that employers participating in the H-2A visa program must offer to sheepherders and open range livestock workers and a date on which the existing rules will be vacated." Pls.' Mot. for Rulemaking Schedule and Vacatur ("Pls.' Mot."), ECF No. 49. For the reasons discussed below, this motion is granted in part and denied in part.

---

[1] Thomas E. Perez is now the Secretary of the U.S. Department of Labor and, consequently, in accordance with Federal Rule of Civil Procedure 25(d), Mr. Perez has been substituted as the named defendant. FED. R. CIV. P. 25(d).

1

I.  **BACKGROUND**

The factual and procedural history of this case will not be repeated here since this background is fully set out in this Court's prior Memorandum Opinion dismissing the suit for lack of both Article III and prudential standing, under Federal Rule of Civil Procedure 12(b)(1), and the D.C. Circuit's reversal of that conclusion.  *See Mendoza v. Solis*, 924 F. Supp. 2d 307, 310-15 (D.D.C. 2013), *rev'd sub nom.*, *Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014).[2]  In short, the plaintiffs are U.S. workers, who left their herding jobs by May, 2011, due to "the substandard wages and working conditions they attribute to the easy availability of foreign herders."  *Mendoza*, 754 F.3d at 1007.  They challenged two Training and Employment Guidance Letters ("TEGLs"), which were published, on August 4, 2011, in the Federal Register by the Federal Defendants to implement a foreign worker visa program, under 8 U.S.C. § 1188(a)(1).  *Id*. at 1007-08.  The TEGLs "establish[ed] the minimum wages and working conditions employers must offer U.S. sheepherders, goatherders, and open-range (cattle) herders before hiring foreign herders."  *Id.* at 1007.

The plaintiffs successfully argued before the D.C. Circuit that the challenged TEGLs "were subject to the notice and comment requirements [of the APA] because they possess all the hallmarks of a legislative rule," by "chang[ing] the regulatory scheme for herding operations."  *Id*. at 1024-25.  Specifically, absent the TEGLs, visa petitions for foreign herders "would be subject to the standards found in 20 C.F.R. part 655, which would, to take only a few examples, require employers to pay herders the higher of the AEWR, the prevailing wage, or the minimum wage, keep track of herders' hours, and pay herders at least twice a month.  The TEGLs, on the

---

[2] The D.C. Circuit found that "[e]ven though the plaintiffs have not worked as herders since 2011 and may not have applied for specific herder jobs since that time," they met the standing requirements because they "have affirmed their desire to work as herders and stated their intention to do so if wages and working conditions improve."  *Mendoza*, 754 F.3d at 1013.

other hand, require employers to pay only the higher of the prevailing wage rate or minimum wage, exempt employers from recording herders' hours actually worked, and allow employers to pay employees once monthly upon mutual agreement between employer and worker." *Mendoza*, 754 F.3d at 1024-25 (citing TEGL No. 15-06, 76 Fed. Reg. at 47, 244-46; TEGL No. 32-10, 76 Fed. Reg. at 47, 257-59).

The D.C. Circuit held that "the Department of Labor violated the Administrative Procedure Act by promulgating [the TEGLs] without providing public notice and an opportunity for comment," and remanded the case to this Court "to craft a remedy to the APA violation." *Id.* at 1025. To fashion an appropriate remedy, the Court directed consideration of "various factors including whether vacating the TEGLs would have a disruptive effect on the herding industry and how quickly the Department of Labor might be able to promulgate, pursuant to the procedural requirements of the APA, new H-2A regulations for herding operations." *Id*. (citing, for comparison, *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 8 (D.C. Cir. 2011) (where agency "failed to conduct a notice-and-comment rulemaking," remand was necessary, but "[b]ecause vacating the present rule would severely disrupt an essential security operation," rule was not vacated and agency was admonished "to act promptly on remand to cure the defect in its promulgation")).

Following the D.C. Circuit's issuance of its opinion, and even before the mandate issued remanding the case, this Court directed the parties to "submit a joint status report . . . that either: (1) proposes an agreed upon remedy for the APA violation or (2) proposes a briefing schedule that will address the various factors the Court should consider in crafting a remedy." Minute Order, September 2, 2014. In response, the parties indicated that, although they agreed

"that the Department of Labor must undertake notice-and-comment rulemaking to replace the [TEGLs] invalidated in this case," they disagreed on the schedule necessary to complete that agency action and whether the TEGLs should be vacated. Jt. Status Report, at 1, ECF No. 48. Consequently, the Court entered a briefing schedule to enable the parties to set out more fully their positions on the appropriate timing and elements of the remedy. Minute Order, September 10, 2014. Briefing on the plaintiff's motion for an order setting a schedule for rulemaking and vacatur is now complete.

## II.   DISCUSSION

The Court's present task is to "craft a remedy to the APA violation." *Mendoza*, 754 F.3d at 1025. The parties appear to agree on key elements of this remedy, including that the Federal Defendants should (1) publish a Notice of Proposed Rulemaking to replace the procedurally defective TEGLs; (2) solicit public comment; (3) respond to significant comments; (4) ensure full inquiry and analysis of relevant economic and policy issues; (5) comply with interagency processes to ensure appropriate oversight by the Office of Information and Regulatory Affairs ("OIRA") and consultation with pertinent agencies, such as the Department of Agriculture; and, finally, (6) generally comply with all applicable legal requirements, including initial and final regulatory flexibility analyses, as required by 5 U.S.C. §§ 603(a), 604(a)(5). *See generally* Pls.' Mem. Supp. of Pls.' Mot. for Rulemaking Schedule and for Vacatur ("Pls.' Mem."), ECF No. 49-1; Defs.' Mem. in Resp. to Pls.' Mot. ("Defs.' Resp."), ECF No. 51; Def.-Int'rs.' Mem. Partial Opp'n to Pls.' Mot. ("Def.-Int'rs' Mem."), ECF No. 50. They disagree on the time table for completion of this process and whether, at the end of the process, vacatur of the TEGLs is required. These two areas of disagreement are addressed separately below.

### A. Time Table For Notice and Comment Rulemaking

The Federal Defendants indicate that work is already underway on a new rule to replace the invalid TEGLs, including preparation of a "proposed methodology for determining wage rates in the open range production of livestock along with an accompanying cost-benefit analysis for OIRA review" and development of "standards for determining recruitment of United States workers and housing requirements for workers." Defs.' Resp. at 5. The plaintiffs request that this work be fully completed and a final rule be placed in effect within 150 days of this Court's order. Pls.' Mem. at 2. Specifically, the plaintiffs seek a remedial order that (1) directs the Federal Defendants to complete the notice and comment rulemaking and publish a final rule within 120 days of this Court's Order, which would be about March 2015; and (2) sets an effective date for the final rule that is 30 days after the date of the publication, which would be about April 2015. *See id.* at 2-3. According to the plaintiffs, this concededly "rapid rulemaking," *id*. at 3, on "[a]n expeditious schedule," *id*. at 4, is necessary because "each day that the TEGLs are in effect, they impose a legally-invalid regime that alters workers' substantive rights," by depressing U.S. workers' wages and working conditions, *id*. at 3-4, particularly since the case has already been underway for an "extended period of time," *id*. at 4.

The Federal Defendants do not appear to resist the plaintiffs' request for a remedial order that outlines a rulemaking schedule. *See* Defs.' Resp. at 9 (asking only that "the agency should be granted leave to complete the required rulemaking process in conformity with the time frame outlined above with a final rule for publication by November 2015").[3] Rather, they contend that

---

[3] The defendant-intervenors contend that no rulemaking schedule needs to be part of the Court's remedial order because the plaintiffs' injury is addressed merely with the opportunity to comment on a proposed rule. Def.-Int'rs' Mem. at 1 ("once Plaintiffs have been given an opportunity to comment on such procedures, their injury has been remedied in full regardless of final adoption and DOL should not be forced to adopt a legislative rule on anyone's schedule but its own"). This Court disagrees. The D.C. Circuit certainly contemplated more extensive consideration of remedial issues on remand, including a rulemaking schedule based upon "how quickly the

the expedited schedule proposed by the plaintiffs cannot be met "without compromising the integrity of the notice and comment process and related statutory and executive order requirements." Defs.' Resp. at 2. The Federal Defendants warn that imposition of such an expedited schedule "may likely undercut the necessary economic study and consideration of public comments that are fundamental aspects of the notice and comment process." *Id.*

In contrast to the plaintiff's proposed schedule to complete final rulemaking and have a new rule in effect within 150 days of this Court's order, the Federal Defendants propose a schedule that triples the length of time for rulemaking to up to 365 days from the date of the remedial order. The Federal Defendants propose the alternative schedule of (1) "issuing in March 2015 a notice of proposed rulemaking open to public comment," *id*. at 2, which would include an initial regulatory flexibility analysis, *id*. at 4; (2) 60 day comment period, *id*. at 4; (3) "a sixty-day period for [Department of Labor ("DOL")] to respond to public comments," *id*. at 5; and (4) a final 90 day period for DOL to "provide a final economic analysis for OIRA's assessment and circulation to other agencies for comment," *id.*; with anticipated completion of the entire rulemaking process in November 2015, *id*. at 3, which would be seventeen months from the issuance of the D.C. Circuit's decision invalidating the TEGLs.

The plaintiffs contest the Federal Defendants' position that more time than 120 days is needed to complete the rulemaking and assert that "DOL is capable of issuing a final rule within the time limit proposed by plaintiffs." Pls.' Mem. at 4.[4] They note, first, that a 60-day comment period could be fit into their 120-day proposed schedule but, if not, Executive Orders 12,866 and

---

Department of Labor might be able to promulgate . . . new H-2A regulations for herding operations." *Mendoza*, 754 F.3d at 1025.

[4] The plaintiffs use as a model for their 120-day timeframe the rulemaking schedule imposed in another case, which involved a single issue of wages in contrast to the multiple issues to be addressed in the new rule. Pls.' Mem. at 3 (discussing *Comite De Apoyo A Los Trabajadores Agricolas v. Solis* (*CATA*), No. 09-240, 2011 WL 2414555, at *5 (E.D. Pa. June 16, 2011)). Contrary to the plaintiffs' view, the Court finds that "the differences in the substantive scope of the rule in *CATA* and the rule at issue here," Pls.' Reply at 4, render the *CATA* case and schedule distinguishable from any schedule to be imposed on the rulemaking here.

6

13,563 do not require, and only recommend, this length of a public comment period. *Id.* at 5 (citing Exec. Order 13,563, Improving Regulation and Regulatory Review, 76 Fed. Reg. 3821, § 2(b) (Jan. 18, 2011); Exec. Order 12,866, Regulatory Planning and Review, 58 Fed. Reg. 51,735, § 6(a) (Sept. 30, 1993)). Moreover, while the plaintiffs do not dispute that a new rule would constitute "significant regulatory action," subject to OIRA review under Executive Order 12,866, they contend that the 90-day period provided in the Executive Order for OIRA review must "yield[] to a contrary court order." *Id.* at 6.[5] In other words, the plaintiffs essentially recommend trimming the time for public comment or for interagency review as necessary to meet a four-month time period to turn-around a new final rule.

Short-cutting the time for adequate notice and comment rulemaking would be short-sighted and end up extending, rather than expediting, the process. The Federal Defendants explain that "the entire herding special procedure is subject to a new rulemaking, including wages, housing, recruitment, and related elements governing the employment of herders." *Id.* at 9. The herder occupations at issue in the TEGLs are fairly unique and the "TEGLs' guidelines have been in effect for over twenty years." Defs.' Opp'n to Pls.' Mot. for Summ. J. at 8, ECF No. 33. Hence, this rulemaking process requires the Federal Defendants to develop a methodology for measuring an appropriate wage regime involving the open range production of livestock occupations as well as the appropriate standards for other components, such as housing, that need to be addressed in the new rule. Thus, the Federal Defendants are correct that "DOL's front-end deliberations" are critical for producing a new rule containing "well formulated"

---

[5] The plaintiffs further criticize the Federal Defendants' proposed schedule for being "five months longer than DOL's earlier estimate of the time necessary to adopt a final rule." Pls.' Reply at 2, ECF No. 52. Indeed, the Federal Defendants previously stated that they would need "no less than 270 days to complete full notice and comment rulemaking," while consistently maintaining that the plaintiffs' timeframe of 120 days "is too short to meet the agency's obligations under the statute and controlling executive orders." Defs.' Opp'n to Pls.' Mot. for Summ. J. at 9, ECF No. 33. While a schedule of 270 days would be preferable to the longer schedule now proposed, the Court appreciates that the prior reference to "*no less than* 270 days" (emphasis added) was a minimum time frame.

program goals and "prevailing domestic labor market conditions," as well as an adequate explanation for "its chosen methodology for setting wage rates for herding occupations." Defs.' Resp. at 6.

Given the length of time the case has been pending, the number of issues to be resolved as part of the refashioning of the special procedures for herders, as well as the complexity of the factors involved in the rulemaking and the significance of this issue to the effected workers, this Court puts a premium on ensuring that the Federal Defendants have sufficient time to get the proposed new rule right to avoid the risk that a "poorly formulated rule would need to be withdrawn in the face of significant public comments, which would add more delay to the process." *Id*. The Court takes seriously the Federal Defendants' caution that the "Plaintiffs' desire for a fast rulemaking should not undercut the integrity and legal defensibility of the planned rulemaking." *Id.* The Federal Defendants do not appear to be dragging their heels but have already begun the predicate work necessary to be able to promulgate a proposed rule that complies with legal and regulatory requirements, and is based on sound methodology to withstand the scrutiny of both the public and the interagency review process. The plaintiffs' proposed schedule would result in significant compression of the time permitted to prepare the proposed rule or to obtain public comment, or both, when important work is being performed during each period outlined by the Federal Defendants.

At the same time, the Court recognizes that the schedule proposed by the Federal Defendants is very generous, or what the plaintiffs characterize as "maximalist." Pls.' Reply at 2. Therefore, imposition of dates certain for completion of the rulemaking process should not pose any difficulty. Consequently, the Court adopts the schedule as proposed by the Federal Defendants and will enter a remedial order containing a rulemaking schedule that requires the

8

Federal Defendants to issue a Notice of Proposed Rulemaking by March 1, 2014, and a final rule by November 1, 2015.

The plaintiffs further request that the Federal Defendants "make the final rule effective 30 days after its publication in the Federal Register," noting that this time frame comports with the APA requirement, under 5 U.S.C. § 553(d), that "[t]he required publication or service of a substantive rule shall be made not less than 30 days before its effective date." Pls.' Mem. at 6. With this request, the plaintiffs seek to avoid any lengthy delay by the Federal Defendants in the new rule's effective date, citing "past DOL practice under similar circumstances." *Id.* The Federal Defendants and defendant-intervenors raise no objection to this aspect of the plaintiffs' request, which appears to be eminently reasonable given the time afforded the Federal Defendants to issue a new final rule. *See* Pls.' Reply at 1 ("Neither DOL nor intervenors have specifically opposed an order requiring that a final rule become effective within 30 days after the rule's publication."). Thus, the remedial order in this case shall direct that the effective date of the new rule shall be no later than 30 days after the rule's publication, or no later than December 1, 2015, whichever is earlier.

### B. Vacatur of TEGLs

The plaintiffs request that the Court order "that the invalid TEGLs be vacated 150 days from the date of the Court's order to coincide with the proposed effective date of the new final rule." Pls.' Mem. at 2. In other words, under the plaintiffs' proposed rulemaking schedule, the TEGLs would remain in effect until the effective date of the new rule and "vacatur and the effective date would be simultaneous." Pls.' Reply at 9. The Federal Defendants and defendant-intervenors incorrectly construe the plaintiffs' request to be for an automatic vacatur after 150 days of the Court's remedial order, *see* Defs.' Resp. at 10; Def.-Int'rs' Mem. at 3-4, but the

9

plaintiffs do "not seek vacatur if 'DOL has not adopted a rule' by the deadline provided by this Court; they seek vacatur coincident with the effective date of the final rule." Pls.' Reply at 9. While the plaintiffs seek an earlier date for the new rule's effectiveness, their request for vacatur of the TEGLs is tied to their proposed timing of the new rule becoming effective. Thus, they contend that "vacatur would have no disruptive effect because it would coincide with issuance of the final rule." Pls.' Mem. at 9; *see also* Pls.' Reply at 12 ("Defendants point to no disruptive effects of vacating the TEGLs on a date that coincides with the effective date of the new final rule.").

Furthermore, the plaintiffs contend that vacatur of the TEGLs is important to "mak[e] clear that they have no further legal force or effect" and "ensur[e] that DOL does not continue to rely on the TEGLs as a source of authority in the event that its rulemaking fails to address each aspect of herder certifications once governed by the TEGLs." Pls.' Mem. at 7; *see also* Pls.' Reply at 9-10 ("the purpose of vacatur in plaintiffs' proposal is to ensure that the TEGLs are wiped from the books once a replacement rule is in effect").

The Federal Defendants' opposition to vacatur of the TEGLs is limited to any vacatur "while DOL undertakes the notice and comment rulemaking process for a replacement rule to be completed by November 2015." Likewise, the defendant-intervenors' objection to the plaintiffs' vacatur request is based on the misunderstanding that this request is "that the TEGLs should expire on a date certain, regardless of whether DOL has placed a new, permanent procedure in their place." Def.-Int'rs' Mem. at 6. As the plaintiffs point out, "they knock down a straw man by focusing on the disruptive effect of vacating the TEGLs *before* a new rule becomes effective, a scenario that will not occur under plaintiffs' proposal." Pls.' Reply at 2 (emphasis in original).

10

The Federal Defendants and defendant-intervenors do not express any problem with vacatur of the TEGLs upon the effective date of the new rule.

The law in this Circuit directs consideration of two principal factors in deciding "whether to vacate a flawed agency action": "(1) 'the seriousness of the . . . deficiencies' of the action, that is, how likely it is 'the agency will be able to justify' its decision on remand; and (2) 'the disruptive consequences of vacatur.'" *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 197 (D.C. Cir. 2009) (quoting *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1048-49, *modified on reh'g on other ground*, 293 F.3d 537 (D.C. Cir. 2002)) (internal quotations, brackets, and citations omitted); *see also Allied-Signal, Inc. v. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-151 (D.C. Cir. 1993)). Application of these factors in this case militates strongly in favor of vacatur of the TEGLs upon the effective date of the new rule, as requested by the plaintiffs. First, the failure of the Federal Defendants to engage in notice and comment is a fundamental procedural flaw that frequently requires vacatur of the invalid agency action. *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110-11 (D.C. Cir. 2014) ("deficient notice is a 'fundamental flaw' that almost always requires vacatur" (quoting *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d at 199)); *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 853 F. Supp. 2d 138, 144-145 (D.D.C. 2012) ("When notice-and-comment is absent, the Circuit has regularly opted for vacatur") (citing *Sprint Corp. v. Fed. Commc'n Comm'n*, 315 F.3d 369 (D.C. Cir. 2003) (noting that the Circuit has "opted for vacatur recently with some regularity" when notice-and-comment is absent)). This is particularly true where, as here, the timing of the vacatur is scheduled in a manner to avoid any disruptive consequences.

Accordingly, the remedial order shall direct that the TEGLs be vacated upon the effective date of the new rule.

## III. CONCLUSION

The plaintiffs' motion for a rulemaking schedule and for vacatur is granted in part and denied in part. As the plaintiffs request, the Court will enter a remedial order that: (1) establishes a rulemaking schedule, although on a time frame that differs from the plaintiffs' proposed schedule; (2) directs the Federal Defendants to publish a Notice of Proposed Rulemaking by March 1, 2014, and a final rule by November 1, 2015; (3) sets the effective date of the new rule to be no later than 30 days after the rule's publication or December 1, 2015, whichever is earlier; and (4) vacates, upon the effective date of the new rule, the TEGLs successfully challenged in this action. The plaintiffs' motion is denied in other respects.

An order consistent with this Memorandum Opinion will be contemporaneously entered.

Date: October 31, 2014

_____
BERYL A. HOWELL
United States District Judge